IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DUANE TOLLIVER, et al.                                    PLAINTIFFS

VS.                      CASE NO. 05-3036

BAXTER COUNTY, ARKANSAS, et al.                           DEFENDANTS

**O R D E R**

Now on this 18th day of July, 2006, comes on to be considered **Defendants' Motions for Summary Judgment (Docs. 44, 54) and Plaintiffs' Motion for Summary Judgment (Doc. 62).** The Court, being well and sufficiently advised, concludes that the defendants' motions should be GRANTED and that the plaintiffs' motion should be DENIED. The Court finds and orders as follows with respect thereto:

**BACKGROUND**

1. Plaintiffs Duane and Donna Tolliver (husband and wife), Franklin Archer, and Harvey Mungle bring this action pursuant to 42 U.S.C. § 1983. Plaintiffs name as defendants Baxter County, Arkansas and the following officers in both their individual and official capacities:

- Baxter County Sheriff Joe Edmonds and Baxter County Deputies Ralph Bird, Rodney Anderson, Ron Gregory, Laura Hodges, Terry Johnson, and Robert Altman;

- Marion County Sheriff Carl McBee and Marion County Deputy Sheriff James David Moffet; and

- 14th Judicial Drug Task Force Officer Greg Harris.[1]

2. Plaintiffs allege that defendants violated their Fourth and Fourteenth Amendment rights in various ways in connection with the execution of a search warrant on the business and residence of plaintiffs Duane and Donna Tolliver.

3. Defendants move for summary judgment. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The Court considers the facts, and the inferences to be drawn from them, in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Pursuant to Local Rule 56.1, the parties have filed statements of facts which they contend are not in dispute. Viewing these statements and the exhibits submitted in support thereof in the light most favorable to the plaintiffs, the following significant facts are made to appear:

a. During the time period in question, Plaintiff Duane Tolliver owned an alternator repair shop called "Alternators Plus," and he and his wife lived in a residence located approximately 40

---

[1] Several other defendants named by plaintiffs were previously dismissed from this action – some voluntarily by plaintiffs and some for plaintiffs' failure to perfect service.

feet from the shop.  Plaintiffs Mungle and Archer both worked at Alternators Plus.

b. On or about February 14, 2002, five search warrants were executed in Baxter and Marion Counties as a result of a multi-agency law enforcement investigation.  One of the search warrants was executed on the Tollivers' business and residence.  Defendants Moffet and Hodges, Baxter County Deputies, prepared the affidavit of probable cause for the warrant on February 13, 2002.  The facts detailed in the affidavit were as follows:

> On December 11, 2001, ... concerned citizen #1 [CC#1] ... advised that Dua[]ne and Donna Tolliver had cooked methamphetamine and usually cook in volume of 60 grams. He/she advised that the preferred ingredients are as follows: mechanics brand starting fluid (obtained at O'Reily's in Mountain Home).  He/she further advised that they purchase their pills on Thursday and Friday from the following locations: The Dollar Store (Mountain Home), both Pronto stations (in Baxter County), the Tystar (Bull Shoals) and "The Castle" located in Missouri near Forsyth.  They buy approximately 480 pills with 2 people getting enough ephedrine/pseudoephedrine for a 60-gram cook.  All items are purchased near the first of the month....
>
> CC#2 [concerned citizen #2] advises that he/she has witnessed ... Donna Tolliver ... leave the residence to buy ephedrine/pseudoephedrine pills.  CC#2 states that he/she has been present in the upstairs apartment of Alternators Plus located in the garage.  CC#2 advises that drug paraphernalia and drugs (methamphetamine) are located and kept in that room at any given time.  He/she also states that he/she was present during an "emergency cook" of methamphetamine in stated apartment....
>
> On January 8, 2002, ... CC#2 advised that ... he/she has received methamphetamine on at least 10 occasions from Mike Tolliver [Duane Tolliver's brother] during the past 12 months....  CC#2 advises that [Mike] Tolliver orders most of his pseudoephedrine over the internet....  CC#2

advised that he/she has overheard Mike Tolliver speak of having "the cook" at his "other girlfriend[']s" rental house....

On December 12, 2001, ... CC#3 [Concerned Citizen #3] advised that Harvey Mungle is employed by Dua[]ne Tolliver at Alternators Plus. Harvey's blue Chevy Pick-up (YNA235) travels and gathers ephedrine/pseudoephedrine pills for Mike Tolliver. CC#3 further states that Donna Tolliver purchased pills and a bulk quantity of Lye (2 lbs.) at Wayne's foods within [the last] 30 days.... He/she states that Donna Tolliver ... purchase[s] pills there (Wayne's) on Tuesday's and Thursday's once or twice during the day. CC#3 advise[d] that he/she had witnessed during the past 10 days ... Donna Tolliver ... traveling to meet with Mike Tolliver. While traveling[,] [she] stopped and bought ephedrine/pseudoephedrine pills in Midway....

On Tuesday, February 4, 2002, ... U.S. Customs Agents intercepted a package addressed to Mike Tolliver ... [containing] nine (9) bottles of pseudoephedrine 200 tablets 60 mg....

Criminal Histories of all suspects are as follows: Mike Tolliver has extensive drug history starting in 1972 to include, possession of Cocaine with intent, possession of marijuana, burglary and aggravated assault. *Duane Tolliver has narcotic convictions to include, conspiracy to import marijuana into the United States, possession of marijuana with intent to deliver, breaking or entering and Larceny.* [emphasis added] Donna Tolliver has no identifiable record.... Harvey Mungle has been charged but not yet convicted with manufacturing ... methamphetamine[] and simultaneous possession of drugs and firearms and possession of anhydrous ammonia....

**Facts establishing the reliability of the confidential informant[s] are as follows.** Concerned citizen #1 ... has prior drug charges. This citizen has in the past provided information to law enforcement officials that has resulted in felony drug arrests and recovery of drug paraphernalia (anhydrous ammonia).

Concerned Citizen #2 ... has no known criminal record and has provided information to officers on prior occasions that was proven to be true and has led to the arrest and recovery of stolen property.

> Concerned Citizen #3 .. has no known criminal record and has provided information prior to this occasion that has led to multiple felony arrests.
>
> The concerned citizens listed above all came forward voluntarily. None of the concerned citizens have knowledge of each other or are related in any way known to this department.... All information received from each of the individuals was consistent with all other individual's statements.... (Doc. 44 Ex. A.)

c. Based on the affidavit of probable cause, a search warrant was issued authorizing the search of the Tollivers' residence and business. The judge issuing the warrant found that the objects to be seized were "in danger of imminent removal" and the warrant specifically stated that the officers were authorized to enter "without announcement." (Id.)

d. Deputy Hodges requested the assistance of the Baxter County Sheriff's Department "Special Response Team," in executing the warrant because of the team's training in executing warrants at high-risk sites. Approximately 14 officers assisted in the execution of the warrant on February 14, 2002.

e. According to Deputy Ken Grayham,[2] a member of the Special Response Team, he and two other members of the team, all dressed in protective gear, were the first to enter the premises of Alternators Plus. Their objective was to neutralize any physical threats. When the team exited their vehicle, the garage door bays

---

[2] Deputy Grayham was one of the defendants previously dismissed for lack of service.

were open and there were people standing inside the garage. Grayham started yelling, "Sheriff's office, search warrant, ... get down!" After the scene was secured, investigators moved in and began searching the premises.

    f.    Plaintiff Duane Tolliver was not present when the search warrant was executed.

    g.    Plaintiff Archer was sitting at a desk in the garage of Alternators Plus when the warrant was executed. According to Archer, a law enforcement officer dressed in a "ninja suit" entered the business, pointed a gun at him and screamed for him to get on the floor. Archer later identified this officer as Deputy Grayham. According to Archer, four or five officers pulled him to the floor and one of the officers handcuffed him. After about 15 or 20 minutes, officers set Archer up in a chair but his handcuffs were not removed until approximately 15 to 30 minutes later.

    h.    Plaintiff Mungle was in the bathroom inside the garage of Alternators Plus when the officers initially entered the building. When Mungle came out of the bathroom, a law enforcement officer pointed a gun at him and ordered him to get down. An officer then handcuffed Mungle face-down on the floor, patted him down, and removed a knife from Mungle's pocket. After about 15 or 20 minutes, officers set Mungle up in a chair, but his handcuffs were not removed.

Mungle saw Deputy Anderson come through the shop with a drug dog and heard officers upstairs kick in a door.

Mungle was eventually placed in a police car and driven to the Baxter County Jail by a City of Gassville police officer.

    I.    Plaintiff Donna Tolliver was inside her residence located adjacent to Alternators Plus. According to Donna Tolliver, when officers entered the residence, one of them threw her to the ground, put a gun to her head, and she was handcuffed for 15 to 20 minutes.

    j.    Officers found no contraband at the Tollivers' business or residence and no charges were filed against any of the named plaintiffs, with the exception of Mungle. As noted in the probable cause affidavit, Mungle was awaiting trial on drug and firearm charges and, as noted above, he was taken to the Baxter County jail after the execution of the search warrant. At the Baxter County Jail, Mungle refused an order by a probation officer to take a "pee test," and he was eventually transported to the Marion County Jail, where he was detained from February 14 to March 5, 2002, for "his failure to comply with the terms of the Pre-Trial Supervision/Bond Conditions." (Doc. 56 Ex. 12.)

    k.    Four other search warrants were executed simultaneously with the one at issue. Mike Tolliver, Plaintiff Duane Tolliver's brother, was arrested, charged, and ultimately convicted of

methamphetamine manufacturing as a result of items seized during the execution of these warrants.

**DISCUSSION**

4. <u>Statute of Limitations</u>

Defendants argue that plaintiffs' individual and official capacity claims are both time-barred.

a. **Individual Capacity Claims**

The statute of limitations on plaintiffs' individual capacity claims is three years. <u>See Ketchum v. City of West Memphis</u>, 974 F.2d 81, 82 (8th Cir. 1992). The search warrant giving rise to plaintiffs' claims was executed on February 14, 2002. Plaintiffs initiated this action on February 11, 2005, within three years of the execution of the warrant.

Defendants argue, "[T]he Plaintiffs allege that the Defendants "could have or should have done something different in the period of time *preceding* the execution of the search warrant...." (Doc. 55 at pg. 2) (emphasis added.) Defendants argue that the statute of limitations therefore began to run prior to the execution of the warrant. The Court sees no merit to this argument. While plaintiffs do complain of certain acts leading up to the issuance and execution of the search warrant, these acts did not culminate in a alleged violation of plaintiffs' rights until the search was actually executed. Indeed, plaintiffs had no knowledge that the

acts in question had even been committed until the warrant was executed.

Accordingly, as plaintiffs filed their complaint within three years of the date the warrant was executed, their individual capacity claims are timely.

    b. **Official Capacity Claims**

"[A]ll actions against sheriffs ... upon any liability incurred by them by doing any act in their official capacity ... shall be brought within two (2) years after the cause of action has accrued and not thereafter." Ark. Code Ann. § 16-56-109. This statute is applicable to deputy sheriffs as well as sheriffs. See Brown v. U.S., 342 F. Supp 987 (E.D. Ark. 1972), aff'd in relevant part, rev'd in part, 486 F.2d 284 (8th Cir. 1973).

As plaintiffs did not institute this action until nearly three years after the alleged events occurred, their claims against defendants in their official capacities are time-barred. The Court notes that even if plaintiffs' official capacity claims were not time-barred, they would still be subject to dismissal, as plaintiffs offer no proof that the alleged violation of their rights resulted from any county policy or custom. See Kuha v. City of Minnetonka, 365 F.3d 590, 603-04 (8th Cir. 2003).

    5.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity on plaintiffs' individual capacity claims. Qualified immunity is

a defense available to public officials sued in their individual capacities. See Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir.), cert. denied, 125 S. Ct. 57 (2004). Public employees are shielded from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In analyzing the issue of qualified immunity, the Court must first determine whether the plaintiffs have asserted the violation of a constitutional right at all, and then assess whether the right was clearly established at the time of the alleged violation. See Robinson v. White County, 2006 WL 1805978, *2 (8th Cir. July 3, 2006). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See id.

The Court will now proceed to apply this analysis to each of the claims asserted by plaintiffs.

### 6. False Statements in Probable Cause Affidavit

Plaintiffs argue that defendants Hodges and Moffet "deliberately lied" in the affidavit supporting the search warrant. According to plaintiffs, defendants falsely stated that Plaintiff Duane Tolliver had narcotics convictions, when in fact, he had "absolutely no criminal history." (Doc. 63 at pg. 14.)

According to Defendant Moffet, he obtained the criminal history information for the various suspects from two well-known law enforcement databases, the Arkansas Crime Information Center and the National Crime Information Center. Both Moffet and Hodges denied knowing any of the statements made in the affidavit for probable cause to be false. At his deposition, Moffet explained that he must have simply made a mistake and confused Duane Tolliver's criminal history with that of his brother, Mike Tolliver.

The facts alleged by plaintiffs, if true, describe a violation of their Fourth Amendment rights. See Franks v. Delaware, 438 U.S. 154, 171 (1978) (warrant based upon affidavit containing "deliberate falsehood" or reflecting reckless disregard for the truth" violates Fourth Amendment). However, defendants are nevertheless entitled to qualified immunity if, setting aside the alleged false statements, the warrant affidavit would still provide probable cause. See Hunter v. Namanny, 219 F.3d 825, 829 (8th Cir. 1996). As will be explained below, the Court concludes that the information provided by the confidential informants was sufficient to establish probable cause and that Duane Tolliver's criminal history (or lack thereof) was not critical to the probable cause determination. Cf. id. (fact that defendant had not been charged with any criminal offense was not critical to a probable cause determination). Accordingly, defendants are entitled to qualified

immunity on plaintiffs' claim concerning the allegedly false statements in the affidavit.

   7.  Probable Cause Based on Information Provided by Informants

To preclude a grant of qualified immunity, a "'warrant application [must be] so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" Mueller v. Tinkham, 162 F.3d 999, 1003 (8th Cir. 1998) (internal citations omitted). For purposes of qualified immunity, "[t]he issue is not whether the affidavit actually establishes probable cause, but rather whether the officer had an objectively reasonable belief that it established probable cause." Thompson v. Reuting, 968 F.2d 756, 760 (8th Cir. 1998).

When a search warrant affidavit relies on the statement of an informant, the reliability of that informant is a key issue. See Mueller, 162 F.3d at 1003. The information provided by an informant is sufficient to support a probable cause finding if the person has provided reliable information in the past or if the information has been independently corroborated. Id.

In the present case, the affidavit contained information from three different informants, who all came forward voluntarily and had no knowledge of each other. The informants' statements were consistent with one another and all three informants had provided law enforcement officers with reliable information in the past.

Further, Defendants Moffet and Hodges interviewed the informants personally and many of the statements implicated the informants themselves in drug activity, and thus, were against the informants' own penal interest. Such factors are important in determining the reliability of an informant. See United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996) (noting personal contact with an informant can strengthen an officer's decision to rely on the information provided and statements against penal interest carry considerable weight). Also of significance is the fact that the information provided by one of the informants concerning Mike Tolliver ordering pseudoephedrine over the internet was corroborated when U.S. Customs agents intercepted a package of pseudoephedrine addressed to Mike Tolliver.

Based on the foregoing, the Court concludes that defendants reasonably relied on the information provided by the informants. As to the sufficiency of the information to establish probable cause, the informants described in detail the purchases of pseudoephedrine and other precursor chemicals; described seeing methamphetamine and drug paraphernalia in the upstairs apartment of Alternators Plus; and described being present during an "emergency cook" of methamphetamine in the apartment. There can be no doubt that this information provided the officers with an objectively reasonable belief that they had probable cause to suspect illegal drug activity.

Plaintiffs argue that the information provided by the informants implicated the Tollivers' business (Alternators Plus) but did not provide probable cause to search their residence. It is irrelevant whether the affidavit specifically linked the alleged drug activity to the Tollivers' residence, as the business and the residence were located on the same piece of real property, just 40 feet away from each other. Cf. United States v. Bennett, 170 F.3d 632, 639 (6th Cir. 1999) (probable cause to search defendant's residence extended to outbuilding, which was in close proximity to house and within curtilage of premises for which search warrant was issued).

In addition, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found. See Maryland v. Garrison, 480 U.S. 79, 84 (1989). The information furnished to the officers provided them with an objectively reasonable belief that there was probable cause to believe that evidence of illegal drug activity could have been found in any portion of the Tollivers' property.

Accordingly, defendants are entitled to qualified immunity on plaintiffs' claim that the search warrant affidavit failed to establish probable cause.

8. <u>No-Knock Entry</u>

Plaintiffs argue that nothing in the search warrant affidavit supported a no-knock entry onto the premises of Alternators Plus or the Tollivers' residence.

In <u>Wilson v. Arkansas</u>, the Supreme Court held for the first time that the "common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment." 514 U.S. 927, 929 (1995). The Court cautioned, however, that "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." <u>Id.</u> at 934.

In the recent case of <u>Hudson v. Michigan</u>, 126 S.Ct. 2159 (2006), the Supreme Court observed:

> *Wilson* and cases following it have noted the many situations in which it is not necessary to knock and announce. It is not necessary when "circumstances presen[t] a threat of physical violence," or if there is "reason to believe that evidence would likely be destroyed if advance notice were given," ... or if knocking and announcing would be "futile[.]" ... We require only that police "have a reasonable suspicion ... under the particular circumstances" that one of these grounds for failing to knock and announce exists, and we have acknowledged that "[t]his showing is not high." 126 S. Ct. at 2162-63 (internal citations omitted).

In the present case, the judge issuing the warrant found that the objects to be seized were "in danger of imminent removal" and the warrant specifically authorized the officers to enter without announcement. An officer is entitled to qualified immunity if he acts pursuant to a judicially issued warrant unless a reasonably

well-trained officer would have known that his actions were illegal despite the judge's authorization. See Malley v. Briggs, 475 U.S. 334, 344 (1986).

The officers had been informed that methamphetamine had been manufactured on the subject premises and that one of the suspects, Plaintiff Mungle, was awaiting trial on charges of simultaneous possession of drugs and firearms. These circumstances gave officers reasonable cause to believe that concerns for officer safety, as well as the possible destruction of evidence, warranted a no-knock entry. See Doran v. Eckold, 409 F.3d 958, 966-67 (8th Cir. 2005) (court found that no-knock entry was justified into house suspected of harboring clandestine methamphetamine lab; court noted officer's testimony that there is an obvious danger of drugs and firearms, that methamphetamine labs are very combustible and can emit highly deadly gases, and that suspects have tried to destroy labs in an attempt to cause harm to officers and to destroy evidence).

Accordingly, defendants are entitled to qualified immunity on plaintiffs' claim concerning the no-knock entry.

9. Excessive Force

Plaintiffs claim that defendants used excessive force during the execution of the search warrant when they forced them to the ground, handcuffed them, and pointed guns at them. Plaintiffs do not identify which, if any, of the remaining named defendants

committed these acts. Plaintiffs concede that they have "had a difficult time" identifying the officers because some "were in SWAT gear, with faces covered" and, because plaintiffs were all "pushed, pulled or thrown to the floor almost immediately upon the officers' coming into the shop and the house, they were not in a physical position to see their assailants." (Doc. 63 at pg. 3.) Plaintiffs contend that "all of the defendants" executed the search warrant and used excessive force. Id. at pg. 4. The Court is doubtful that such a blanket, conclusory assertion is sufficient to impose individual liability on the defendants. Regardless, even if all of the defendants did employ force during the execution of the search warrant, the Court finds that the force used did not violate plaintiffs' clearly established rights.

Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment, and the test is whether the amount of force used was objectively reasonable under the particular circumstances. See Graham v. Connor, 490 U.S. 386, 394-96 (1989). The test includes allowance for the fact that "officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary." Id. at 397. Further, to defeat defendants' assertion of qualified immunity, plaintiffs must establish that "it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201 (2001).

Given the safety concerns the officers faced in executing the search warrant -- as detailed above -- the Court concludes that the force used by them was reasonable. Cf. Edwards v. Giles, 51 F.3d 155, 157 (8th Cir. 1995) (officer was entitled to qualified immunity on suspect's claim that officers physically placed him on the ground and pointed a gun at him); Sharrar v. Felsing, 128 F.3d 810, 821-22 (3rd Cir. 1997) (concluding that officers did not use excessive force in requiring arrestees to lie face down in dirt, with guns to their heads, while being subjected to vulgar threats; officers were arresting four men, had been advised that at least one had used gun in violent episode, and that men might have been involved in drugs). The fact that plaintiffs did not suffer any physical injury as a result of the force supports the Court's conclusion that the force used by defendants did not violate plaintiffs' rights. Graham, 490 U.S. at 396 ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment") (citation omitted); Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990) (allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, were insufficient to support a Fourth Amendment violation).

Based on the foregoing, the Court concludes that defendants are entitled to qualified immunity on plaintiffs' excessive force claim.

10. <u>Plaintiff Mungle's False Arrest Claim</u>

Mungle argues that his arrest following the execution of the search warrant was not supported by probable cause. The officer Mungle identified as the one placing him under arrest and transporting him to jail is not a named defendant. Further, once Mungle arrived at the jail and refused the probation officer's order to take a "pee test," officers had probable cause to detain him for failure to comply with the terms of his pre-trial supervision/bond. Accordingly, Mungle's false-arrest claim is without merit.

**CONCLUSION**

11. Based on the foregoing, the Court concludes that **Defendants' Motions for Summary Judgment (Docs. 44, 54)** should be **GRANTED** and that **Plaintiffs' Motion for Summary Judgment (Doc. 62)** should be **DENIED.**

It follows, therefore, that plaintiffs' claims should be **DISMISSED,** with prejudice, in their entirety and the Court will so order.

IT IS SO ORDERED.

                                                                                 /S/JIMM LARRY HENDREN
                                                                                 JIMM LARRY HENDREN
                                                                                 UNITED STATES DISTRICT JUDGE